FARHAD NOVIAN (SBN 118129)
farhad@novianlaw.com
ANTHONY S. CHAVEZ (SBN 288089)
anthonyc@novianlaw.com
SHANNA JAVAHERI (SBN 289014)
shanna@novianlaw.com
NOVIAN & NOVIAN, LLP
1801 Century Park East, Suite 1201
Los Angeles, California 90067
Telephone:   (310) 553-1222
Facsimile:   (310) 553-0222

Attorneys for Plaintiff SHAHRIAR KHAZAI, suing individually and derivatively on behalf of ANOMA LA, CORP.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAHRIAR KHAZAI, an individual, suing individually and derivatively on behalf of ANOMA LA, CORP., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> RUCHIKA GROVER, an individual; ANIRUDH "AJAY" GROVER, an individual; NATCO EXPORTS PVT LTD, an Indian corporation; and DOES 1-10, inclusive, <br><br> Defendants, <br><br> and <br><br> ANOMA LA, CORP., a California corporation, <br><br> Nominal Defendant. | CASE NO: 2:22-cv-00100 <br><br> **COMPLAINT** for: <br> 1. RICO Violation (18 U.S.C. § 1962) (Direct) <br> 2. Breach of Fiduciary Duty (Direct) <br> 3. Breach of Fiduciary Duty (Derivative) <br> 4. Breach of Contract (Direct) <br> 5. Promissory Estoppel (Direct) <br> 6. Negligence (Derivative) <br> 7. Inducing Breach of Contract (Derivative) <br> 8. Intentional Interference with Contract (Derivative) <br> 9. Negligent Interference with Contract (Derivative) <br> 10. Intentional Interference with Prospective Economic Relations (Derivative) |

11. Negligent Interference with prospective Economic Relations (Derivative)

12. Conversion and Theft (Penal Code, § 496) (Derivative)

13. Conversion and Theft (Penal Code, § 496) (Direct)

14. Fraudulent Conveyance (Derivative)

15. Fraudulent Conveyance (Direct)

16. Money Had and Received (Derivative)

17. Money Had and Received (Direct)

18. Unjust Enrichment (Direct)

19. Unfair Business Practices (Derivative)

20. Involuntary Dissolution (Derivative)

21. Accounting (Derivative)

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff SHAHRIAR KHAZAI ("Plaintiff" or "Mr. Khazai") hereby complains against Defendants RUCHIKA GROVER ("Ruchika"), an individual, ANIRUDH "AJAY" GROVER ("Ajay"), an individual, NATCO EXPORTS PVT LTD ("Natco"), an Indian corporation (collectively, the "Defendants"), Nominal Defendant ANOMA LA, CORP. ("Anoma LA" or the "Company), a California corporation, and DOES 1 through 10, inclusive, and alleges as follows:

**<u>JURISDICTION AND VENUE</u>**

1.      This Court has subject matter jurisdiction over Plaintiff's claims under 18 U.S.C. § 1961, *et seq.*, pursuant to 18 U.S.C. § 1964(a), (c) (jurisdiction over RICO claims) and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

2.      This Court has personal jurisdiction over the Defendants because each of them have traveled to California, communicated with Plaintiff in-person in

California, committed some of the misconduct alleged in California, committed misconduct that caused harm that could only be felt in California, and is involved in the operation of a California corporation that does business throughout the United States, including California.  Plaintiff's action against Defendants arises out of these substantial contacts with the United States and California.

3.      Venue is proper in this Court because the County of Los Angeles is the principal place of business of Anoma LA, the place where some of the contractual obligations alleged were due, and the place where some of the misconduct complained of occurred.  Venue is, therefore, proper in the Western Division of the Central District of California under 28 U.S.C. § 1391(a).

## **NATURE OF THIS ACTION**

4.      This action arises from Ruchika and Ajay's attempts to usurp corporate opportunities from Anoma LA, steal money meant for the Company, and unlawfully bypass the Company and Mr. Khazai's share of the profits, revenues, goodwill, and reputation of the Company. Since 2018, Mr. Khazai worked diligently to build up Anoma LA's customer base, reputation, and business goodwill throughout the United States.  Just as Mr. Khazai's hard work started to pay off, Ajay and Ruchika saw how lucrative the business would be, so they started taking steps to divert business for their own benefit and to the detriment of Mr. Khazai and the Company. As set forth in detail herein, Natco breached its fiduciary duties and unlawfully took possession of and/or converted property of the Company and usurped corporate opportunities from the Company for which Plaintiff would be entitled to a 50% share of the profits, equity, and goodwill built up in the Company. Amongst other things, Defendants made false statements to the Company's clients that harmed the reputation and value of the Company. Defendants are also holding themselves out as representatives of Anoma LA and convincing customers of Anoma LA to deal only with them and make payments meant for Anoma LA to Natco in India. Further, Ajay and Ruchika appear to be engaged in a U.S. and local tax avoidance scheme whereby

they divert funds originally destined for Anoma LA in California and have them wired or sent by check, without business justification, directly to Natco in India.

## **PARTIES**

5.      Plaintiff Mr. Khazai is an individual who at all relevant times was residing in the County of Los Angeles, California.  Plaintiff is an entrepreneur and businessman and serves as one of two Directors of the Company and serves as the Company's Secretary. Plaintiff is also one of two shareholders in the Company and owns 50% of the Company.

6.      Defendant Natco is an Indian corporation with its principal place of business in India. Natco is the only other shareholder in the Company other than Plaintiff and owns 50% of the Company.

7.      Defendant Ruchika is an individual who at all relevant times was residing in the County of Los Angeles, California. Ruchika is the only other Director of the Company, in addition to Plaintiff. Ruchika also serves as the President, Chief Executive Officer, and Chief Financial Officer. Ruchika is Ajay's daughter. Plaintiff is informed and believes, and on that basis alleges, that Ruchika is a shareholder and Director of Natco.

8.      Nominal Defendant Anoma LA is a California corporation with its principal place of business in the County of Los Angeles, California. Anoma LA sells decorative stonework in the United States imported from India and manufactured by Natco.

9.      Upon information and belief, Defendant Ajay is an individual who at all relevant times was residing in India. Ajay is Ruchika's father. Plaintiff is informed and believes, and on that basis alleges, that Ajay is a shareholder and Director of Natco along with Ruchika.

10.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff at this time.  Plaintiff therefore sues said

1   Defendants, and each of them, by such fictitious names.  Plaintiff will advise the
2   Court and seek leave to amend this Complaint when the true names and capacities of
3   each such Defendant has been ascertained.  Plaintiff is informed and believes, and
4   based thereon alleges, that each such Defendant designated as a DOE is responsible
5   in some manner for the events and happenings referred to herein or as hereinafter
6   specifically alleged.

7                              **ALTER EGO LIABILITY**

8          11.    There is such unity of interest and ownership among Ajay and Ruchika
9   and Natco that the separate personalities of the of the corporation and the individual
10   no longer exist and that, if the acts are treated as those of the corporation alone, an
11   inequitable result will follow. The business affairs of Defendants (Ajay, Ruchika,
12   and Natco) are, and at all relevant times were, so mixed and intermingled that they
13   cannot reasonably segregated. Ajay and Ruchika are using Natco as a mere shell and
14   conduit for their affairs and are, and at all relevant times were, the alter ego of Natco.

15          12.    Plaintiff is informed and believes, and on that basis alleges, that Ajay
16   and Ruchika are owners and Directors of Natco.

17          13.    Plaintiff is informed and believes, and on that basis alleges, that Ajay
18   and Ruchika dominate and control Natco and that Ajay and Ruchika are hiding
19   behind Natco to perpetrate fraud, circumvent statues, and/or accomplish some other
20   wrongful or inequitable purpose. Ajay and Ruchika are abusing the corporate form of
21   Natco to defraud Anoma LA and Plaintiff and are using the corporate form unjustly
22   and in derogation of Anoma LA's and/or Plaintiff's interests.

23          14.    Because of Ajay, Ruchika, and Natco's fraudulent, deceptive, unfair,
24   and unlawful actions to divert business income and usurp corporate opportunities
25   from Anoma LA, the corporate entity of Natco should be disregarded and Ajay and
26   Ruchika should held liable for the actions of Natco.

27          15.    Ajay and Ruchika are holding themselves out as representatives of
28   Anoma LA and convincing customers of Anoma LA to deal only with them and

1    make payments meant for Anoma LA to Natco in India. If Ajay and Ruchika are not

2    held liable for the payments Natco is taking that rightfully belong to Anoma LA,

3    injustice will result.

4                    **DERIVATIVE ACTION AND DEMAND FUTILITY**

5           16.    As detailed herein, Natco breached its fiduciary duties and unlawfully

6    took possession of and/or converted property of the Company and usurped corporate

7    opportunities from the Company for which Plaintiff would be entitled to a 50% share

8    of the profits, equity, and goodwill built up in the Company. Amongst other things,

9    Ajay, on behalf of Natco, claimed that the name "Anoma" belonged solely to Natco,

10   claimed that Anoma LA is no longer allowed to use the name "Anoma," made false

11   statements to the Company's clients that harmed the reputation and value of the

12   Company, directed clients of the Company to pay Natco directly instead of paying

13   the Company and directed potential clients to deal only with Ajay, Natco, and

14   Ruchika and not with the Company.

15          17.    As of the filing of this Complaint, the Company's board of directors is

16   comprised of only two persons: Plaintiff and Ruchika.

17          18.    Based on applicable law including, but not limited to California

18   Corporations Code § 800, the facts alleged in this Complaint, and the longstanding

19   rule that equity does not compel a useless and futile act, Plaintiff is excused from any

20   requirement to make a pre-filing demand upon Anoma LA's board of directors to

21   bring the instant action. Such a demand would be a useless and futile act because (1)

22   a pre-submission demand would be a futile and useless act as the majority of the

23   board of directors are not able to conduct an independent and objective investigation

24   of the alleged wrongdoing (the only Director other than Plaintiff is engaged in the

25   alleged wrongdoing); (2) a pre-submission demand would be a futile and useless act

26   as it would require Ruchika to vote to recommend bringing an action against herself,

27   her father, and a company belonging to her and her father (Natco); (3) the wrongful

28   conduct alleged is not subject to the business judgment rule; (4) to properly

1   prosecute this lawsuit, it would be necessary for Ruchika and Ajay sue themselves,
2   requiring them to expose themselves to significant sums in potential civil liability
3   which they will not do; and (5) Ruchika and Ajay have done nothing but deny
4   Plaintiff's demands since at least November 2021.  Thus, Plaintiff sues derivatively
5   on Anoma LA's behalf.

6        19.    Plaintiff has standing to bring this shareholder derivative action because
7   Plaintiff is a shareholder of the Company.

8   ## FACTS COMMON TO ALL CLAIMS

9        20.    Throughout 2018, Plaintiff and Defendants discussed the creation of the
10  company they eventually incorporated as Anoma LA, a company formed for to sell
11  decorative stonework in the United States that is imported from India and
12  manufactured by Natco.  During these discussions Defendants and Plaintiff agreed
13  that they were forming a company together whereby Ruchika would secure clients
14  and provide design work, Natco would provide manufacturing, and Plaintiff would
15  secure clients, and import, distribute, and sell the Company's stone and fulfill
16  customers' orders throughout the United States.  Ajay, on behalf of Natco, promised
17  to give Anoma LA a royalty-free perpetual license to use Natco's "Anoma"
18  trademark.  Ajay, on behalf of Natco, and Ruchika promised to work in good faith
19  with Plaintiff to sell Anoma stone nationwide throughout the United States and that
20  they would share in the profits of that enterprise.

21       21.    On or about October 11, 2018, Defendants and Plaintiff formally
22  incorporated Anoma LA in California. Plaintiff and Natco were, and remain, the only
23  two shareholders of Anoma LA. Ruchika serves as the President, Chief Executive
24  Officer, and the Chief Financial Officer of the Company.  Ruchika is also one of the
25  two Directors of the Company.  Plaintiff is the Secretary and the other Director of
26  the Company.  As noted above, Plaintiff and Natco are each 50% shareholders of the
27  Company.  However, prior to incorporation of the Company, Plaintiff made a
28  conditional transfer of 1% of his share of the Company whereby Natco agreed to

give the Company a perpetual, royalty-free license of its "Anoma" trademark for the life of the Company and further agreed to go into nationwide business with Mr. Khazai in the United States. In other words, the parties agreed that Natco would be allowed to control the Company as 51% shareholder so long as Natco worked in good faith toward the benefit of the Company and its sales in the United States, treated Plaintiff as an equal business partner, and refrained from competing against the Company in the United States.  Plaintiff and Natco agreed to the terms of this transfer because, as long as the parties were working together in good faith, Plaintiff did not require that he control the Company. As detailed herein, Natco breached the conditions Mr. Khazai placed on the conditional transfer of 1% of his shares, and therefore, Natco is no longer allowed to exercise 51% control of the Company. Accordingly, Natco owns only 50% of the shares of the Company.

        22.    Upon formation of the Company, Plaintiff and Ruchika agreed to take on different roles and responsibilities in accordance with their respective skillsets. Defendants and Plaintiff agreed that Ruchika's duties were to identify potential customers and provide design services. Defendants and Plaintiff agreed that Natco's duties were to manufacture decorative stonework based on Ruchika's and/or Plaintiff's designs and customers' requests. Ajay, on behalf of Natco, promised to give Anoma LA a royalty-free perpetual license to use Natco's "Anoma" trademark. Ajay, on behalf of Natco, and Ruchika promised to work in good faith with Plaintiff to sell Anoma stone nationwide throughout the United States and that they would share in the profits of that enterprise. Defendants and Plaintiff further agreed that Plaintiff would provide a showroom and play a critical role in the Company's day-to-day business operations as an officer and Director of the Company.  More specifically, they agreed that Plaintiff would handle the Company's finances and bank account, fulfilling customers' orders, and generating business for the Company throughout the United States. Plaintiff would identify potential clients throughout the United States, build relationships with major real estate developers and builders,

provide a U.S.-based showroom for Anoma LA's decorative stonework, provide design services and also provide United States production, import, distribute, and sell such decorative stonework.

23.    From the inception of the Company to present day, and based on the agreement between Plaintiff and Defendants, among other things, Plaintiff did everything required and agreed upon by the parties including but not limited to hiring sales representatives to market Anoma stone around the United States and renting out his warehouse space at rates well below market rent to be used for Anoma LA's showroom.  Plaintiff even sacrificed and deferred his salary and all payments owed to him while he helped get the Company off the ground.

24.    However, after June 2021, it became clear to Plaintiff that Natco, Ajay, and Ruchika were unlawfully competing against the Company, usurping corporate opportunities, diverting customer's payments to India (bypassing the Company) without business justification, fraudulently telling customers of Anoma LA that Anoma LA is selling knockoff copies of Anoma stone, and fraudulently telling customers that Anoma LA is no longer authorized to receive payment from customers. Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, and Ruchika engaged in and are engaging in this misconduct as part of a scheme to defraud and steal from Plaintiff and unlawfully cut him out of his share of the profits, revenues, reputation, and goodwill of the Company.  As of December 17, 2021, when Plaintiff received a defective call for a special meeting of the shareholders from Natco purporting to discuss dissolution of the Company based on Natco's revocation of any license to use the "Anoma" name, Plaintiff learned that Defendants have been scheming to unlawfully and artificially devalue the Company to avoid letting Plaintiff participate in the true value of the Company.

25.    Plaintiff first became suspicious of Defendants in or about early 2021 when he learned that Ruchika altered the Anoma LA website to provide only contact information that she controlled and which Plaintiff had no access to.  In so doing, she

interfered with Plaintiff's ability to fulfill customer orders and complete sales with customers. When confronted by Plaintiff, Ruchika changed the phone number back to the Anoma LA company phone number on the website. However, Ruchika has always maintained sole control over the email address info@Anomastone.com, which means that she was the only one who knew about customer inquiries coming into that account. When Plaintiff became concerned about Ruchika's misconduct and began investigating various matters relating to the Company, his investigation revealed that Ruchika was bypassing Anoma LA to take on customers herself and cut Anoma LA out of the revenues and cut Mr. Khazai out of his share of any profits, equity, and goodwill.

26.    In or about October 2021, Ruchika tried to have a container of imported stonework delivered to another warehouse outside of Anoma LA's control. Apparently, Ruchika had gone behind Plaintiff's back and developed clients outside of Anoma LA and claimed that because she had personal clients' materials in the container she was "uncomfortable" having the entire container delivered to Plaintiff's warehouse in Gardena, CA. Plaintiff explained to her that she could not have "personal" clients because she was usurping corporate opportunities and, in any event, the 70% of the shipment belonging to Anoma LA customers needed to be delivered as soon as possible because the shipments were already delayed by three months. Eventually, Ruchika relented and provided the necessary documents to have the shipment released by customs and delivered to the Gardena, CA warehouse. After that event and discussions between Plaintiff and Defendants, Defendants agreed and admitted that Ruchika was not lawfully able to have her own separate customers and that Anoma LA was entitled to a cut of the proceeds from Ruchika's "personal" clients.  Accordingly, Natco provided an approximately $4,500 credit against amounts owed by Anoma LA to Natco for manufacturing.

27.    Further investigation has revealed that Defendants have engaged in the following misconduct designed to steal funds belonging to Anoma LA, hide and

conceal the receipt of funds belonging to Anoma LA, and unlawfully cut Anoma LA
(and Plaintiff) out of revenues and profits from business deals:

      a.     In or about January 2021, Plaintiff landed an approximately
$400,000 project to provide a travertine stone mural measuring approximately
50 feet wide and 14 feet tall for a multi-billion-dollar commercial high-rise
development in Manhattan, New York (50 Hudson Yards).  When completed,
50 Hudson Yards will be New York City's fourth largest commercial office
tower.   The company handling the installation of the walls in the building,
Atlantic Exterior Wall Systems, LLC ("Atlantic"), sent Anoma LA a purchase
order for $414,820.00 for a decorative travertine stone mural that is
approximately 50 feet long and 14 feet tall. Anoma LA invoiced Atlantic for
two deposits of 30% due immediately, on or about June 18, 2021 and 20% due
upon approval of the design, on or about August 17, 2021. The remaining
balance, 50%, would be due when Atlantic made shipping arrangements to
pick up the stone mural from Natco in India.  Atlantic paid its 50% deposits,
totaling $207,410.00, to Anoma LA.  After receiving Atlantic's initial deposit,
on or about June 21, 2021, Anoma LA paid a 50% deposit to Natco, totaling
approximately $92,000, to get started on manufacturing the mural. After that,
Atlantic and Natco went silent and Plaintiff did not know what the progress of
the project was. Upon investigation, Plaintiff learned that Defendants
convinced Atlantic to pay them $207,410.00 by sending a check in the mail.
Defendants told Atlantic that Atlantic needed to pay Natco the $207,410.00
before it could receive delivery of the mural.  This $207,410.00 amount was
the remaining amount due and owing to Anoma LA and not to Defendants.
Defendants fraudulently obtained the funds in an attempt to conceal and hide
them from Plaintiff.  This occurred sometime in or around October 2021.
Natco confirmed the receipt of these funds in a letter sent by mail and email on
December 17, 2021.  As of December 17, 2021, the mural was on a container

ship in the ocean headed to an East Coast port despite Atlantic not paying the remaining 50% balance due to Anoma LA. Atlantic had to pay the 50% remaining balance to Anoma LA before picking up the finished mural and certainly was not supposed to make payment directly to Natco. Anoma LA relied on that money to pay its expenses, including overhead, taxes, rent, and manufacturing charges billed by Natco. In its December 17, 2021 letter, Natco admitted that the $207,410.00 it took belonged to Anoma LA.

        b.      Around the time that Mr. Khazai landed the 50 Hudson Yards mural project for Anoma LA, he also got a lead from Precision Stone ("Precision") on a major residential development in New York (212 5th Avenue) that was seeking custom stone staircases and other decorative stone features to be created.  The 212 5th Avenue project was estimated to bring in approximately $3 million to Anoma LA. Plaintiff worked diligently to sell this major residential development on Anoma LA designs for the stone staircases and decorative stone features. But, suddenly, in or around October 2021, Precision and the developer stopped talking to Plaintiff.  Plaintiff's investigation revealed that Ajay and Ruchika told the developer and Precision to deal directly with Natco and cut Mr. Khazai and Anoma LA out of the project completely. Ajay, Natco, and Ruchika intended to take the entire $3 million project for themselves.

        c.      Precision gave Mr. Khazai the lead for the 212 5th Avenue project after it purchased Anoma stonework through Mr. Khazai for a high-end residential development in Miami, Florida (87 Park Collins Avenue). This stonework project was worth approximately $72,000.00 for Anoma LA.  The customer paid a 30% deposit, totaling around $22,000.00, on or about September 23, 2021. Then the customer went silent. Plaintiff is informed and believes, and on that basis alleges, that Ajay, Ruchika, and Natco convinced the customer to deal directly with them and cut Khazai and Anoma LA out of

1    the project completely.

2    28.    As part of their scheme, Defendants have also used and are using

3    Natco's trademarks to undermine the Company in violation of their fiduciary duties

4    to the Company.

5    29.    On or about November 25, 2021, Ajay, on behalf of Natco, sent Mr.

6    Khazai a letter stating that Natco was terminating "any distribution and/or licensing

7    agreement between Natco and Anoma LA, Corp. and/or [Mr. Khazai]."  The letter

8    goes on to claim that Anoma LA stone goods held in the Gardena, CA warehouse

9    belong to Natco for sale by consignment. None of the statements made in Ajay's

10    November 25, 2021 letter are true. The inventory in the Gardena, CA warehouse was

11    purchased from Natco on terms agreed to by the Plaintiff and Defendants. Plaintiff

12    was not working with Natco or Anoma LA pursuant to a distribution or licensing

13    agreement but, instead, is a 50% shareholder in Anoma LA and 50% owner of

14    anything belonging to Anoma LA. Natco is the other 50% shareholder of Anoma and

15    Natco's ability to act as a 51% shareholder was conditioned on its granting a

16    perpetual license of the "Anoma" trademark to Anoma LA and on Natco's working

17    with Plaintiff in good faith to sell Anoma stone throughout the United States.

18    30.    Beginning in October 2021 and continuing through the date of this

19    Complaint, Defendants have also been engaging in mail and wire fraud and money

20    laudering. Defendants are sending out false communications to customers of Anoma

21    LA and telling them that Plaintiff is no longer authorized to speak on behalf of

22    Anoma LA, sell Anoma stone, or accept payments on behalf of Anoma LA.

23    Defendants are using these false statements to cause customers of Anoma LA to

24    make payments directly to India in a manner that bypasses Anoma LA, which

25    conceals these funds from Plaintiff as well as unlawfully avoids federal, state, and

26    local taxation of those funds.

27    31.    On or about November 25, 2021, Defendants cut off Plaintiff's access to

28    his Anoma LA email account and any computer systems necessary to fulfil customer

orders. Defendants are trying to prevent Plaintiff from communicating with customers or learning when payments are made by customers. In addition, Ruchika's personal phone number and an email controlled entirely by Ruchika are now displayed as the only contact information for Anoma LA on Anoma LA's website. In so doing, Defendants have unlawfully commandeered the nationwide operations of Anoma LA, diverted all business opportunities in their favor, to the exclusion of Plaintiff, and disrupted Plaintiff's critical role in Anoma LA's day-to-day business operations and dealings with customers and fulfilment of customers' orders.

32.   Plaintiff is informed and believes, and on that basis alleges, that Defendants are working against the Company in an attempt to harm the Company, artificially decrease its value, and dissolve the Company for an amount that is unlawfully and artificially decreased by Defendants' extensive fraud and other misconduct as alleged herein.

33.   Plaintiff is informed and believes, and on that basis alleges, that Natco's false statements regarding the "Anoma LA" name and false statements that Plaintiff was acting pursuant to a distribution and licensing agreement and could be "terminated" from selling stone on behalf of Anoma LA, were made in an effort to cut Plaintiff out of his 50% share of any income generated from extremely lucrative customers looking to Anoma LA for major decorative stonework projects.

34.   Plaintiff and the Company have been harmed by Defendants' scheme to unlawfully and artificially devalue the Company, steal funds the Company is entitled to (and to which Plaintiff is entitled to a share of), usurp corporate opportunities, divert Company funds to India without business justification, defraud the Company's customers, and harm Plaintiff's business reputation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIRST CLAIM

## RICO Violation (18 U.S.C. § 1962)

### (Direct Claim Against Natco, Ajay, Ruchika, and Does 1-10)

35.     Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 34, inclusive, as if fully set forth herein.

36.     Plaintiff has been injured by the conduct of Natco, Ajay, and Ruchika (collectively, the "RICO Enterprise"), who have engaged in a pattern of racketeering activity by engaging in mail fraud (in violation of 18 U.S.C. § 1341, wire fraud (in violation of 18 U.S.C. § 1343), money laundering (in violation of 18 U.S.C. § 1956), and/or conspiracy to commit mail fraud, wire fraud, and money laundering (in violation of 18 U.S.C. §§ 1349, 1956.)

37.     The RICO Enterprise has engaged in and is currently engaged in mail fraud, wire fraud, and money laundering or a conspiracy to engage in those things as part of an unlawful scheme to defraud Plaintiff, steal and conceal funds belonging to Plaintiff and Anoma LA, steal from Plaintiff and unlawfully cut him out of the profits, revenues, reputation, and goodwill of Anoma LA.  As part of this unlawful scheme of fraud and theft, Defendants engaged in the conduct of an unlawful enterprise through a pattern of racketeering activity that caused injury to Plaintiff and Anoma LA.

38.     <u>Mail Fraud Allegations:</u>  the RICO Enterprise engaged in mail fraud or conspiracy to commit mail fraud in at least the following ways:

a.     Throughout 2018, Defendants used the mail to communicate with Plaintiff, the dates of these mailings occurred between January 2018 and October 2018 and are ascertainable from discovery.  Throughout 2018, Plaintiff and Defendants discussed the creation of the company they eventually incorporated as Anoma LA.  During these discussions Defendants led Plaintiff to believe that they were forming a company together whereby Ruchika would secure clients and provide design work, Natco would provide

manufacturing, and Plaintiff would secure clients, and import, distribute, and sell the Company's stone and fulfill customers' orders throughout the United States.  Ajay, on behalf of Natco, promised to give Anoma LA a royalty-free perpetual license to use Natco's "Anoma" trademark.  Ajay, on behalf of Natco, and Ruchika promised to work in good faith with Plaintiff to sell Anoma stone nationwide throughout the United States and that they would share in the profits of that enterprise.  In 2021, Defendants demonstrated that their promises were false and they had no intention of running a business with Plaintiff but instead were planning to steal the Company, its goodwill, reputation, profits, and revenue from Plaintiff once the Company became profitable.

b.      On or about November 25, 2021, Ajay, on behalf of Natco, sent Plaintiff a letter stating that it was terminating any distribution and/or licensing agreement between Natco and Anoma LA and that any goods in Anoma LA's inventory were being held for sale by consignment.  None of these statements are true but Defendants sent at least one letter containing these untrue statements in the hopes that Plaintiff would rely on them and give up control of Anoma LA and not challenge Defendants' efforts to steal his share of the Company and its goodwill, revenue, reputation, and profits out from under him.

c.      On or about November 29, 2021, Ruchika informed Plaintiff that "All clients and dealers have already been informed that you are misusing the brand" and that "any product received from Anoma LA will be a copy and not original."  Ruchika admitted that she and the other Defendants falsely told customers of Anoma LA by mail that the Company was selling counterfeit goods in order to induce customers to work directly with Defendants and cut Anoma LA and Plaintiff out of revenues from the deals.

d.      Plaintiff is informed and believes, and on that basis alleges, that

as part of the scheme to steal Anoma LA's business from Plaintiff, Defendants convinced Atlantic to pay them $207,410.00 by sending a check in the mail. This $207,410.00 amount was due and owing to Anoma LA and not to Defendants.  Defendants fraudulently obtained the funds in an attempt to conceal and hide them from Plaintiff.  This occurred sometime in or around October 2021.  Natco confirmed the receipt of these funds in a letter sent by mail and email on December 17, 2021.

      e.    At the same time further investigation revealed that Defendants stole $207,410.00 due and owing to Anoma LA from Atlantic, another customer, Precision, suddenly went silent and was also late paying 70% of its total bill to Anoma LA.  The outstanding balance due and owing to Anoma from Precision is $50,000.00.  Plaintiff is informed and believes, and on that basis alleges, that as part of the scheme to steal Anoma LA's business from Plaintiff, Defendants convinced Precision to pay them $50,000.00 by sending a check in the mail.  As alleged above, Defendants have already confirmed that they unlawfully stole money due to Anoma LA from another Anoma LA customer, Atlantic.

39.   <u>Wire Fraud Allegations:</u>  the RICO Enterprise engaged in wire fraud or conspiracy to commit wire fraud in at least the following ways:

      a.    Defendants communicated with Plaintiff via text message and email, which used wires and telecommunications systems that crossed state lines and international borders.

      b.    Throughout 2018, Defendants spoke on the phone with Plaintiff, sent text messages, and sent emails, the dates of which are discoverable through phone records and discovery of pertinent text messages and emails. Plaintiff and Defendants discussed the creation of the company they eventually incorporated as Anoma LA.  During these discussions Defendants led Plaintiff to believe that they were forming a company together whereby

Ruchika would secure clients and provide design work, Natco would provide

manufacturing, and Plaintiff would secure clients, and import, distribute, and

sell the Company's stone and fulfill customers' orders throughout the United

States. Ajay, on behalf of Natco, promised to give Anoma LA a royalty-free

perpetual license to use Natco's "Anoma" trademark. Ajay, on behalf of

Natco, and Ruchika promised to work in good faith with Plaintiff to sell

Anoma stone nationwide throughout the United States and that they would

share in the profits of that enterprise. In 2021, Defendants demonstrated that

their promises were false and they had no intention of running a business with

Plaintiff but instead were planning to steal the Company, its goodwill,

reputation, profits, and revenue from Plaintiff once the Company became

profitable.

c.      Beginning in October 2021 and continuing through the date of

this Complaint, Ajay, Natco, and Ruchika have communicated and currently

are communicating with customers of Anoma LA and have falsely told and

currently are telling them that Plaintiff is no longer authorized to speak on

behalf of Anoma LA, sell Anoma stone, or accept payments on behalf of

Anoma LA. Ajay, Natco, and Ruchika have told and are continuing to tell

customers to pay them directly and not to make any payments to Anoma LA.

d.      After Atlantic was late in paying its 50% deposit to Anoma LA

($207,410.00) in December 2021, further investigation revealed that Ajay,

Ruchika, and Natco unlawfully convinced Atlantic to make a payment directly

to Natco and basically stole $207,410.00 from Atlantic, which still owes

Anoma LA that same amount. Plaintiff is informed and believes, and on that

basis alleges, that Defendants used emails, telephone calls, and/or international

wire transfer networks to unlawfully divert this money from Anoma LA and

Plaintiff. After Anoma LA sent a demand letter to Atlantic on or about

December 15, 2021, on or about December 17, 2021, Natco sent a letter by

email to Plaintiff confirming that Natco took the final $207,410.00 payment from Atlantic that was due and owing to Anoma LA.  In Natco's December 17, 2021 letter, which was sent by mail and email, Ajay, on behalf of Natco, falsely claimed that Plaintiff took $85,000.00 from the Company and that the Company was no longer able to conduct business because Natco may lawfully deny Anoma LA the ability to use Natco's trademark.

     e.     At the same time further investigation revealed that Defendants stole $207,410.00 due and owing to Anoma LA from Atlantic, another customer, Precision, suddenly went silent and was also late paying 70% of its total bill to Anoma LA.  The outstanding balance due and owing to Anoma from Precision is $50,000.00.  Plaintiff is informed and believes, and on that basis alleges, that Defendants used emails, telephone calls, and/or international wire transfer networks to unlawfully divert this money from Anoma LA and Plaintiff.  As alleged above, Defendants have already confirmed that they unlawfully stole money due to Anoma LA from another Anoma LA customer, Atlantic.

     f.     On or about November 29, 2021, Ruchika informed Plaintiff that "All clients and dealers have already been informed that you are misusing the brand" and that "any product received from Anoma LA will be a copy and not original."  Ruchika admitted that she and the other Defendants falsely told customers of Anoma LA by email, telephone, or other electronic means that the company was selling counterfeit goods in order to induce customers to work directly with Defendants and cut Anoma LA and Plaintiff out of revenues from the deals.

    40.   Money Laundering Allegations:  the RICO Enterprise engaged in money laundering or conspiracy to commit money laundering in the following ways:

     a.     In or about October 2021, Defendants convinced Atlantic to pay them $207,410.00 directly to them in India thereby bypassing Anoma LA's

bank account and the United States financial system.  Plaintiff is informed and believes, and on that basis alleges, that this transfer was designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the $207,410.00.  Also, by keeping Plaintiff in the dark about whether or not Atlantic even paid this amount, Defendants hoped to conceal their receipt of these funds and the fact that they stole them from Anoma LA and Plaintiff. Plaintiff is informed and believes, and on that basis alleges, that this transfer was also designed to avoid a transaction reporting requirement under California or Federal law.

b.      Plaintiff is informed and believes, and on that basis alleges, that in or about October 2021, Defendants convinced Precision to pay $50,000.00 directly to them in India thereby bypassing Anoma LA's bank account and the United States financial system.  Plaintiff is informed and believes, and on that basis alleges, that this transfer was designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the $50,000.00.  Also, by keeping Plaintiff in the dark about whether or not Precision even paid this amount, Defendants hoped to conceal their receipt of these funds and the fact that they stole them from Anoma LA and Plaintiff.  Plaintiff is informed and believes, and on that basis alleges, that this transfer was also designed to avoid a transaction reporting requirement under California or Federal law.

c.      Plaintiff is informed and believes, and on that basis alleges, that starting in October 2021 and continuing through present, Defendants convinced other customers of Anoma LA to make payments directly to them in India thereby bypassing Anoma LA's bank account and the United States financial system.  Plaintiff is informed and believes, and on that basis alleges, that these transfers were designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the diverted funds.  Also, by keeping Plaintiff in the dark about whether customers have paid amounts

due and owing to Anoma LA, Defendants hope to conceal their receipt of these funds and the fact that they stole them from Anoma LA and Plaintiff. Plaintiff is informed and believes, and on that basis alleges, that these unlawful transfers were designed to avoid a transaction reporting requirement under California or Fedreal law.

41.    As a direct and proximate result of Natco, Ajay, and Ruchika's conduct as alleged herein, Plaintiff has been damaged individually in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $1.7 million.

## SECOND CLAIM

### Breach of Fiduciary Duty

**(Direct Claim Against Natco, Ajay, Ruchika, and Does 1-10)**

42.    Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 41, inclusive, as if fully set forth herein.

43.    As a Director and board member of the Company, and through her ability to control the business of the Company, Ruchika owed the Company and its individual shareholders the duty to exercise due care and diligence in the management and administration of the affairs of the Company and in the use and preservation of its property and assets; the duty of loyalty, to put the interests of the Company above her own personal and financial interests; and the duty of candor, including full and candid disclosure of all material facts related thereto.

44.    As a controlling (50%) shareholder, Natco owed the Company and its individual shareholders a duty of loyalty to put the interests of the Company above its own personal and financial interests and not to compete against the Company.

45.    Ajay, acting on behalf of Natco, was required to observe and fulfil Natco's duties to the Company and not work, on behalf of Natco, to undermine and compete against the Company.

46.    Plaintiff is informed and believes, and on that basis alleges, that Natco

and Ruchika have repeatedly violated their fiduciary duties of loyalty and care to Plaintiff and Anoma LA by engaging in the conduct alleged herein, including but not limited to:

       a.     Converting and/or receiving assets belonging to the Company or Plaintiff by taking payments meant for the Company and preventing Plaintiff from having access to customer communications and project information.

       b.     Taking customers and projects for themselves and cutting Anoma LA and thus Plaintiff out of the revenues from the projects.

       c.     Causing delays and disruptions to current projects that Plaintiff was working on by removing his access to Company email and computer systems.

       d.     Defendants have unlawfully commandeered the nationwide operations of Anoma LA, diverted all business opportunities in their favor, to the exclusion of Plaintiff, and disrupted Plaintiff's critical role in Anoma LA's day-to-day business operations and dealings with customers and fulfilment of customers' orders. Ruchika is using the Company website to advertise contact information in her sole control as being contact information for the Company. Defendants have cut Plaintiff off from Company email and other computer systems necessary for him to fulfill his critical role in the Company's day-to-day operations and fulfilment of customers' orders

       e.     Making false and harmful statements to the Company's clients, including: that payments to Anoma LA will not be honored, that Plaintiff does not have authority to sell Anoma stone or accept payments on behalf of Anoma LA, and that Plaintiff is no longer "licensed" to use the "Anoma" name.

47.     As a direct and proximate result of Natco, Ajay, and Ruchika's conduct as alleged herein, Plaintiff has been damaged individually in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $1.7

1  million.

2      48.    Plaintiff is informed and believes, and on that basis alleges, that the

3  conduct of Defendants as alleged herein was malicious, fraudulent, and

4  unconscionable, and that an award of exemplary or punitive damages is warranted as

5  against Defendants in an amount to be proven at trial.

6                              **THIRD CLAIM**

7                          **Breach of Fiduciary Duty**

8            **(Derivative Claim Against Natco, Ajay, and Ruchika)**

9      49.    Plaintiff realleges and incorporates by reference each and every

10  allegation of the above paragraphs 1 through 48, inclusive, as if fully set forth herein.

11      50.    As a controlling shareholder (50%) of the Company, Natco owed the

12  Company and its individual shareholders the duty of loyalty, to put the interests of

13  the Company above its own personal and financial interests and not compete against

14  the Company.

15      51.    Ajay, acting on behalf of Natco, was required to observe and fulfil

16  Natco's duties to the Company and not work, on behalf of Natco, to undermine and

17  compete against the Company.

18      52.    As a Director and board member of the Company, and through her

19  ability to control the business of the Company, Ruchika owed the Company and its

20  individual shareholders the duty to exercise due care and diligence in the

21  management and administration of the affairs of the Company and in the use and

22  preservation of its property and assets; the duty of loyalty, to put the interests of the

23  Company above her own personal and financial interests; and the duty of candor,

24  including full and candid disclosure of all material facts related thereto.

25      53.    Plaintiff is informed and believes, and on that basis alleges, that Natco

26  and Ruchika have repeatedly violated their fiduciary duties of loyalty and care to

27  Plaintiff and Anoma LA by engaging in the conduct alleged herein, including but not

28  limited to:

a.    Converting and/or receiving assets belonging to the Company or Plaintiff by taking payments meant for the Company and preventing Plaintiff from having access to customer communications and project information.

b.    Taking customers and projects for themselves and cutting Anoma LA out of the revenues from the projects.

c.    Causing delays and disruptions to current projects that Plaintiff was working on by removing his access to Company email and computer systems.

d.    Defendants have unlawfully commandeered the nationwide operations of Anoma LA, diverted all business opportunities in their favor, to the exclusion of Plaintiff, and disrupted Plaintiff's critical role in Anoma LA's day-to-day business operations and dealings with customers and fulfilment of customers' orders. Ruchika is using the Company website to advertise contact information in her sole control as being contact information for the Company. Defendants have cut Plaintiff off from Company email and other computer systems necessary for him to fulfill his critical role in the Company's day-to-day operations and fulfilment of customers' orders

e.    Making false and harmful statements to the Company's clients, including that payments to Anoma LA will not be honored, that Plaintiff does not have authority to sell Anoma stone or accept payments on behalf of Anoma LA, and that Plaintiff is no longer "licensed" to use the "Anoma LA" name.

54.    As a direct and proximate result of Natco, Ajay, and Ruchika's conduct as alleged herein, the Company has been damaged in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $3.2 million.

55.    Plaintiff is informed and believes, and on that basis alleges, that the conduct of Defendants as alleged herein was malicious, fraudulent, and unconscionable, and that an award of exemplary or punitive damages is warranted as

1  against Defendants in an amount to be proven at trial.

2  ## FOURTH CLAIM

3  ## Breach of Contract

4  ### (Direct Claim Against Natco, Ajay, Ruchika and Does 1-10)

5  56.    Plaintiff realleges and incorporates by reference each and every

6  allegation of the above paragraphs 1 through 55, inclusive, as if fully set forth herein.

7  57.    Plaintiff had a partially oral and partially written agreement with Ajay

8  and Ruchika to form a company to sell decorative stonework throughout the United

9  States. Natco agreed it would be a 50% shareholder and Plaintiff would be a 50%

10  shareholder. Plaintiff and Defendants agreed that Ruchika would secure clients and

11  provide design work, Natco would provide manufacturing, and Plaintiff would

12  secure clients, and import, distribute, and sell the Company's stone and fulfill

13  customers' orders throughout the United States.  Ajay, on behalf of Natco, agreed to

14  give Anoma LA a royalty-free perpetual license to use Natco's "Anoma" trademark.

15  Ajay, on behalf of Natco, and Ruchika further agreed to work in good faith with

16  Plaintiff to sell Anoma stone nationwide throughout the United States and that they

17  would share in the profits of that enterprise.  Prior to incorporation of the Company,

18  Plaintiff made a conditional transfer 1% of his share of the Company to Natco in

19  exchange for Natco's agreeing to give a perpetual, royalty-free license of its

20  "Anoma:" trademark to Anoma LA for the life of the Company and conditioned on

21  the parties going into nationwide business together in the United States. In other

22  words, as long as Natco was working in good faith toward the benefit of the

23  Company and its sales in the United States, it would be a 51% shareholder.

24  58.    The parties executed the oral portions of their agreement by engaging in

25  the following conduct:

26      a.    In October 2018, the parties incorporated Anoma LA in

27      California with Natco as a 51% shareholder and Plaintiff as a 49%

28      shareholder;

b.     Natco licensed Anoma LA to use its "Anoma" trademark royalty free and, ostensibly, for a perpetual term.

c.     In 2019, Anoma LA opened its showroom in Plaintiff's Gardena, CA warehouse and has been paying below market rent to Plaintiff since 2020;

d.     Plaintiff has played a critical role in the Company's day-to-day business operations as an officer and Director of the Company by handling the Company's finances and bank account, designing, producing, importing, distributing, and selling the Company's goods and services, fulfilling customers' orders, and generating business for the Company throughout the United States;

e.     On one occasion, when Ruchika admitted to developing customers outside of the Company and usurping corporate opportunities, Natco gave Anoma LA a $4,500 credit toward amounts owed for manufacturing as Anoma LA's share of the proceeds Ruchika wrongfully, and without justification, diverted from Anoma LA.

f.     Until November 2021, Anoma LA's website listed Anoma LA's phone number as a line that was under the control of Plaintiff, Ruchika, and Ajay. As part of his critical production role and critical role in overseeing the Company's day-to-day business operations, Plaintiff regularly communicated with customers using this business line.

59.     Plaintiff has done all, or substantially all, of the material things that the parties' contract required him to do.

60.     Starting in June 2021 and continuing through the date of this Complaint, Defendants have breached the parties' contract by engaging in the following misconduct:

a.     Ruchika used and is continuing to use the Anoma LA name to generate stonework customers for herself while cutting Anoma LA and Plaintiff out of any revenues derived from her business.

b.      Defendants have unlawfully commandeered the nationwide operations of Anoma LA, diverted all business opportunities in their favor, to the exclusion of Plaintiff, and disrupted Plaintiff's critical role in Anoma LA's day-to-day business operations and dealings with customers and fulfilment of customers' orders. Ruchika is using the Company website to advertise contact information in her sole control as being contact information for the Company. Defendants have cut Plaintiff off from Company email and other computer systems necessary for him to fulfill his critical role in the Company's day-to-day operations and fulfilment of customers' orders.

c.      On November 25, 2021, Natco sent Plaintiff a letter purporting to terminate Anoma LA's license to use Natco's "Anoma" trademark.

d.      Defendants engaged in conversion, theft, and/or receipt of the Company's assets, property, corporate opportunities, and funds – including payments due and owing to Anoma LA.

61.     Because Natco breached its obligations to perpetually license the "Anoma" trademark to Anoma LA and work with Plaintiff in good faith to sell Anoma stone throughout the United States, Natco is not entitled to the 1% share of the company that Plaintiff conditionally transferred in exchange for performance of those promises.  Accordingly, Plaintiff is a 50% shareholder of the Company and Natco is a 50% shareholder.

62.     As a direct and proximate result of Natco, Ajay, and Ruchika's conduct as alleged herein, Plaintiff has been damaged individually in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $1.7 million.

## **FIFTH CLAIM**
## **Promissory Estoppel**
### **(Direct Claim Against Natco, Ajay, Ruchika and Does 1-10)**

63.     Plaintiff realleges and incorporates by reference each and every

allegation of the above paragraphs 1 through 62, inclusive, as if fully set forth herein.

64.     Natco and Plaintiff entered into a partially oral and partially written contract with the following pertinent terms:

a.     Natco promised to give Anoma LA a perpetual license to use its "Anoma" trademark for the life of the Company.

b.     Natco promised that it and Plaintiff would work together to sell Anoma stone throughout the United States.

c.     In exchange for and conditioned on Natco's performance of these promises, Plaintiff gave 1% of his 50% share of the Company to Natco to make Natco 51% shareholder and Plaintiff 49% shareholder.

65.     Plaintiff relied on Natco's promises and the parties executed the oral portions of their contract with the following conduct:

a.     In October 2018, the parties incorporated Anoma LA in California with Natco as a 51% shareholder and Plaintiff as a 49% shareholder;

b.     Natco licensed Anoma LA to use its "Anoma" trademark.

c.     In 2019, Anoma LA opened its showroom in Plaintiff's Gardena, CA warehouse and has been paying below market rent to Plaintiff since 2020;

d.     From the inception of the Company to present day, Plaintiff hired sales representatives to market Anoma stone around the United States;

e.     Plaintiff has played a critical role in the Company's day-to-day business operations as an officer and Director of the Company by handling the Company's finances and bank account, designing, producing, importing, distributing, and selling the Company's goods and services, fulfilling customers' orders, and generating business for the Company throughout the United States;

f.     On one occasion when Ruchika admitted to developing customers outside of the Company and usurping corporate opportunities, Natco gave

1    Anoma LA a $4,500 credit toward amounts owed for manufacturing as Anoma

2    LA's share of the proceeds Ruchika wrongfully, and without justification,

3    diverted from Anoma LA.

4    g.    Until November 2021, Anoma LA's website listed Anoma LA's

5    phone number as a line that was under the control of Plaintiff, Ruchika, and

6    Ajay. As part of his critical production role and critical role in overseeing the

7    Company's day-to-day business operations, Plaintiff regularly communicated

8    with customers using this business line.

9    66.    Natco breached its promises with the following misconduct:

10    a.    Ruchika used and is continuing to use the Anoma LA name to

11    generate stonework customers for herself while cutting Anoma LA and

12    Plaintiff out of any revenues derived from her business.

13    b.    Defendants have unlawfully commandeered the nationwide

14    operations of Anoma LA, diverted all business opportunities in their favor, to

15    the exclusion of Plaintiff, and disrupted Plaintiff's critical role in Anoma LA's

16    day-to-day business operations and dealings with customers and fulfilment of

17    customers' orders. Ruchika is using the Company website to advertise contact

18    information in her sole control as being contact information for the Company.

19    Defendants have cut Plaintiff off from Company email and other computer

20    systems necessary for him to fulfill his critical role in the Company's day-to-

21    day operations and fulfilment of customers' orders.

22    c.    On November 25, 2021, Natco sent Plaintiff a letter purporting to

23    terminate Anoma LA's license to use Natco's "Anoma" trademark.

24    d.    Defendants engaged in conversion, theft, and/or receipt of the

25    Company's assets, property, corporate opportunities, and funds – including

26    payments due and owing to Anoma LA.

27    67.    As a direct and proximate result of Natco, Ajay, and Ruchika's conduct

28    as alleged herein, Plaintiff has been damaged individually in an amount exceeding

the jurisdictional limit of this Court, to be proven at trial, but no less than $1.7 million.

68.    Because Natco breached its obligations grant a perpetual, royalty-free license of the "Anoma" trademark to Anoma LA and work with Plaintiff in good faith to sell Anoma stone throughout the United States, Natco is not entitled to the 1% share of the company that Plaintiff gave Natco in exchange for those promises. Accordingly, Plaintiff is a 50% shareholder of the Company and Natco is a 50% shareholder.

## SIXTH CLAIM

### Negligence

### (Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)

69.    Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 68, inclusive, as if fully set forth herein.

70.    Defendants Natco, Ajay, and Ruchika, as persons with the ability to control the Company, owed a duty of care to the Company and its shareholders, including Plaintiff, to run the business in a reasonable manner.

71.    Defendants breached that duty of care by engaging in the following conduct:

a.    Ruchika used and is continuing to use the Anoma LA name to generate stonework customers for herself while cutting Anoma LA and Plaintiff out of any revenues derived from her business.

b.    Defendants have unlawfully commandeered the nationwide operations of Anoma LA, diverted all business opportunities in their favor, to the exclusion of Plaintiff, and disrupted Plaintiff's critical role in Anoma LA's day-to-day business operations and dealings with customers and fulfilment of customers' orders. Ruchika is using the Company website to advertise contact information in her sole control as being contact information for the Company. Defendants have cut Plaintiff off from Company email and other computer

1    systems necessary for him to fulfill his critical role in the Company's day-to-

2    day operations and fulfilment of customers' orders.

3         c.    In or about October 2021 and continuing through present,

4    Ruchika and Ajay are communicating with Anoma LA's customers to falsely,

5    and without justification, tell them that Plaintiff is no longer authorized to sell

6    Anoma stone, accept payments, or represent Anoma LA. Ruchika and Ajay

7    have further acted unlawfully in telling Anoma LA's customers to pay Natco

8    directly because payments to Anoma LA will not be honored.

9         d.    Defendants are interfering with the day-to-day business

10   operations of the Company while trying to divert all business opportunities

11   and revenues to their favor because their efforts have hindered Plaintiff's

12   critical role in the day-to-day business operations of the Company.

13        e.    Defendants are squandering and damaging the Company's

14   business goodwill and reputation and potentially causing the Company to lose

15   the customer base built up by Plaintiff.

16        f.    Conversion, theft, and/or receipt of the Company's assets,

17   property, corporate opportunities, and funds – including payments due and

18   owing to Anoma LA.

19   72.    As a direct and proximate result of Natco, Ajay, and Ruchika's conduct

20   as alleged herein, the Company has been damaged in an amount exceeding the

21   jurisdictional limit of this Court, to be proven at trial, but no less than $3.2 million.

22                              **SEVENTH CLAIM**

23                         **Inducing Breach of Contract**

24        **(Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)**

25   73.    Plaintiff realleges and incorporates by reference each and every

26   allegation of the above paragraphs 1 through 72, inclusive, as if fully set forth herein.

27   74.    Anoma LA had a contract with Precision and Atlantic to pay for

28   stonework projects in New York and Miami respectively:

a.     Atlantic issued a purchase order to Anoma LA for around §400,000.00 for a 50 foot long by 14 foot tall mural at 50 Hudson Yards in New York. Anoma LA invoiced Atlantic for two deposits totaling 50%, around $200,000.00, and Atlantic paid those payments. Atlantic was required to pay the remaining 50% balance (around $200,000.000) to Anoma LA before arranging to pick up the mural from Natco in India.

b.     Anoma LA invoiced Precision for a 30% deposit (around $22,000) for decorative stonework at 87 Park Collins Avenue in Miami. Precision paid the 30% deposit.

75.     Defendants knew of the contracts between Anoma LA and Precision and between Anoma LA and Atlantic.

76.     Plaintiff is informed and believes, and on that basis alleges, that Defendants, with intent to cause Atlantic and Precision to breach their contracts with Anoma LA, convinced Atlantic and Precision to stop speaking with Plaintiff, deal directly with Natco, and make payments directly to Natco in breach of their contracts with Anoma LA.

77.     Anoma LA was harmed when Atlantic and Precision failed to make payments to Anoma LA, but instead paid Natco directly.

78.     Defendants' efforts to bypass Anoma LA, deal directly with Anoma LA's customers, and cut Anoma LA out of revenues to which it is entitled were a substantial factor in causing Anoma LA's harm.

79.     As a direct and proximate result of Natco, Ajay, and Ruchika's conduct as alleged herein, the Company has been damaged in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $250,000.00.

## EIGHTH CLAIM

### Intentional Interference with Contract

**(Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)**

80.     Plaintiff realleges and incorporates by reference each and every

allegation of the above paragraphs 1 through 79, inclusive, as if fully set forth herein.

81.   Anoma LA had a contract with Precision and Atlantic to pay for stonework projects in New York and Miami respectively:

      a.   Atlantic issued a purchase order to Anoma LA for around §400,000.00 for a 50 foot long by 14 foot tall mural at 50 Hudson Yards in New York. Anoma LA invoiced Atlantic for two deposits totaling 50%, around $200,000.00, and Atlantic paid those payments. Atlantic was required to pay the remaining 50% balance (around $200,000.000) to Anoma LA before arranging to pick up the mural from Natco in India.

      b.   Anoma LA invoiced Precision for a 30% deposit (around $22,000) for decorative stonework at 87 Park Collins Avenue in New York. Precision paid the 30% deposit.

82.   Defendants knew of the contracts between Anoma LA and Precision and between Anoma LA and Atlantic.

83.   Plaintiff is informed and believes, and on that basis alleges, that Defendants convinced Atlantic and Precision to stop speaking with Plaintiff, deal directly with Natco, and make payments directly to Natco in breach of their contracts with Anoma LA.

84.   Defendants intended to disrupt the performance of Atlantic's and Precision's contracts with Anoma LA or knew that disruption of performance of Atlantic's and Precision's contracts with Anoma LA was certain or substantially certain to occur.

85.   Anoma LA was harmed when Atlantic and Precision failed to make payments to Anoma LA, but instead paid Natco directly.

86.   Defendants' efforts to bypass Anoma LA, deal directly with Anoma LA's customers, and cut Anoma LA out of revenues to which it is entitled were a substantial factor in causing Anoma LA's harm.

87.   As a direct and proximate result of Natco, Ajay, and Ruchika's conduct

as alleged herein, the Company has been damaged in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $250,000.00.

## NINTH CLAIM

## Negligent Interference with Contract

### (Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)

88.     Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 87, inclusive, as if fully set forth herein.

89.     Anoma LA had a contract with Precision and Atlantic to pay for stonework projects in New York and Miami respectively:

   a.      Atlantic issued a purchase order to Anoma LA for around §400,000.00 for a 50 foot long by 14 foot tall mural at 50 Hudson Yards in New York. Anoma LA invoiced Atlantic for two deposits totaling 50%, around $200,000.00, and Atlantic paid those payments. Atlantic was required to pay the remaining 50% balance (around $200,000.000) to Anoma LA before arranging to pick up the mural from Natco in India.

   b.      Anoma LA invoiced Precision for a 30% deposit (around $22,000) for decorative stonework at 87 Park Collins Avenue in New York. Precision paid the 30% deposit.

90.     Defendants knew of the contracts between Anoma LA and Precision and between Anoma LA and Atlantic.

91.     Plaintiff is informed and believes, and on that basis alleges, that Defendants convinced Atlantic and Precision to stop speaking with Plaintiff, deal directly with Natco, and make payments directly to Natco in breach of their contracts with Anoma LA.

92.     Defendants failed to act with reasonable care when they disrupted the performance of Atlantic's and Precision's contracts with Anoma LA.

93.     Defendants, in their efforts to divert business income and usurp corporate opportunities from Anoma LA failed to act with reasonable care.

94.     Anoma LA was harmed when Atlantic and Precision failed to make payments to Anoma LA, but instead paid Natco directly.

95.     Defendants' efforts to bypass Anoma LA, deal directly with Anoma LA's customers, and cut Anoma LA out of revenues to which it is entitled were a substantial factor in causing Anoma LA's harm.

96.     As a direct and proximate result of Natco, Ajay, and Ruchika's conduct as alleged herein, the Company has been damaged in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $250,000.00.

## TENTH CLAIM

### Intentional Interference with Prospective Economic Advantage

### (Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)

97.     Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 96, inclusive, as if fully set forth herein.

98.     Anoma LA had a contract with Precision and Atlantic to pay for stonework projects in New York and Miami respectively:

   a.     Atlantic issued a purchase order to Anoma LA for around §400,000.00 for a 50 foot long by 14 foot tall mural at 50 Hudson Yards in New York. Anoma LA invoiced Atlantic for two deposits totaling 50%, around $200,000.00, and Atlantic paid those payments. Atlantic was required to pay the remaining 50% balance (around $200,000.000) to Anoma LA before arranging to pick up the mural from Natco in India.

   b.     Anoma LA invoiced Precision for a 30% deposit (around $22,000) for decorative stonework at 87 Park Collins Avenue in New York. Precision paid the 30% deposit.

99.     Anoma LA had a lead from Precision for a $3 million project to provide custom stone staircases for 212 5th Avenue in New York.

100.    Defendants knew of the contracts between Anoma LA and Precision for the 87 Park Collins Avenue project in Miami and between Anoma LA and Atlantic

1    for the 50 Hudson Yards project in New York.

2        101.    Defendants knew that Anoma LA was close to securing the $3 million

3    project to provide custom stone staircases for 212 5th Avenue in New York.

4        102.    Suddenly, without warning, Precision stopped working with Plaintiff on

5    the 212 5th Avenue project in New York and went silent.

6        103.    Plaintiff is informed and believes, and on that basis alleges, that

7    Defendants convinced Atlantic and Precision to stop speaking with Plaintiff, deal

8    directly with Natco, and make payments directly to Natco in breach of their contracts

9    with Anoma LA.

10        104.    Defendants intended to disrupt the performance of Atlantic's and

11    Precision's contracts with Anoma LA or knew that disruption of performance of

12    Atlantic's and Precision's contracts with Anoma LA was certain or substantially

13    certain to occur.

14        105.    Defendants intended to disrupt the relationship between Anoma LA and

15    Precision for the 212 5th Avenue project in New York.

16        106.    Anoma LA was harmed when Atlantic and Precision failed to make

17    payments to Anoma LA, but instead paid Natco directly.

18        107.    Anoma LA was harmed when Precision failed to purchase its custom

19    stone staircases from Anoma LA.

20        108.    Defendants' efforts to bypass Anoma LA, deal directly with Anoma

21    LA's customers, and cut Anoma LA out of revenues to which it is entitled were a

22    substantial factor in causing Anoma LA's harm.

23        109.    As a direct and proximate result of Natco, Ajay, and Ruchika's conduct

24    as alleged herein, the Company has been damaged in an amount exceeding the

25    jurisdictional limit of this Court, to be proven at trial, but no less than $3.2 million.

26

27

28

## ELEVENTH CLAIM

### Negligent Interference with Prospective Economic Advantage

### (Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)

110.   Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 109, inclusive, as if fully set forth herein.

111.   Anoma LA had a contract with Precision and Atlantic to pay for stonework projects in New York and Miami respectively:

      a.      Atlantic issued a purchase order to Anoma LA for around §400,000.00 for a 50 foot long by 14 foot tall mural at 50 Hudson Yards in New York. Anoma LA invoiced Atlantic for two deposits totaling 50%, around $200,000.00, and Atlantic paid those payments. Atlantic was required to pay the remaining 50% balance (around $200,000.000) to Anoma LA before arranging to pick up the mural from Natco in India.

      b.      Anoma LA invoiced Precision for a 30% deposit (around $22,000) for decorative stonework at 87 Park Collins Avenue in New York. Precision paid the 30% deposit.

112.   Anoma LA had a lead from Precision for a $3 million project to provide custom stone staircases for 212 5th Avenue in New York.

113.   Defendant knew or should have known of the contracts between Anoma LA and Precision for the 87 Park Collins Avenue project in Miami and between Anoma LA and Atlantic for the 50 Hudson Yards project in New York.

114.   Defendants knew or should have known  that Anoma LA was close to securing the $3 million project to provide custom stone staircases for 212 5th Avenue in New York.

115.   Suddenly, without warning, Precision stopped working with Plaintiff on the 212 5th Avenue project in New York and went silent.

116.   Plaintiff is informed and believes, and on that basis alleges, that

Defendants convinced Atlantic and Precision to stop speaking with Plaintiff, deal directly with Natco, and make payments directly to Natco in breach of their contracts with Anoma LA.

117.   Defendants, in their efforts to divert business income and usurp corporate opportunities from Anoma LA, failed to act with reasonable care.

118.   Defendants' conduct disrupted performance of Atlantic's and Precision's contracts with Anoma LA and disrupted the relationship between Anoma LA and Precision for the 212 5th Avenue project in New York.

119.   Anoma LA was harmed when Atlantic and Precision failed to make payments to Anoma LA, but instead paid Natco directly.

120.   Anoma LA was harmed when Precision failed to purchase its custom stone staircases from Anoma LA.

121.   Defendants' wrongful conduct was a substantial factor in causing Anoma LA's harm.

122.   As a direct and proximate result of Natco, Ajay, and Ruchika's conduct as alleged herein, the Company has been damaged in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $3.2 million.

## TWELFTH CLAIM

## Conversion and Theft (Penal Code § 496)

### (Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)

123.   Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 122, inclusive, as if fully set forth herein.

124.   Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, or Ruchika received funds meant for Anoma LA, wrongfully withheld these funds from Anoma LA and Plaintiff, and that Natco, Ajay, and Ruchika knew that those funds were misappropriated or stolen. Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, and Ruchika are communicating with

customers of Anoma LA to tell them to pay Natco, Ajay, or Ruchika directly and avoid making payments to Anoma LA.

125.   Natco, Ajay, and Ruchika are working together to help each other conceal, withhold, or profit from funds they know are stolen or unlawfully obtained or they assisted in wrongfully obtaining.

126.   Plaintiff and/or the Company owned, possessed, and/or was entitled to immediate possession at the time of the conversion of certain personal property, assets, funds, intellectual property, and profits, including payments from customers in sums capable of identification.

127.   Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, and Ruchika concealed the theft or misappropriation of funds belonging to Anoma LA and/or Plaintiff.

128.   Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, and Ruchika personally benefitted from the theft of payments meant for Anoma LA.

129.   Plaintiff did not consent to Natco, Ajay, and Ruchika's unlawful possession of funds belonging to the Company and/or Plaintiff.

130.   As a direct and proximate result of the conversion and/or theft of Company assets and funds by Natco, Ajay, and Ruchika, the Company and Plaintiff have suffered damages and lost profits in a sum capable of identification in an amount to be determined at trial, but are in excess of the jurisdictional minimum of this Court.

131.   The Company is entitled to an award of treble damages, costs of suit, and reasonable attorneys' fees from Natco, Ajay, and Ruchika on the basis of their participation in the theft of funds belonging to the Company.

132.   Plaintiff is informed and believes, and on that basis alleges, that the conduct of Defendants as alleged herein was malicious, fraudulent, and unconscionable, and that an award of exemplary or punitive damages is warranted as

against Defendants in an amount to be proven at trial.

## THIRTEENTH CLAIM

### Conversion and Theft (Penal Code § 496)

**(Direct Claim Against Natco, Ajay, Ruchika and Does 1-10)**

133.   Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 132, inclusive, as if fully set forth herein.

134.   Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, or Ruchika received funds meant for Anoma LA, wrongfully withheld these funds from Anoma LA and Plaintiff, and that Natco, Ajay, and Ruchika knew that those funds were misappropriated or stolen. Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, and Ruchika are communicating with customers of Anoma LA to tell them to pay Natco, Ajay, or Ruchika directly and avoid making payments to Anoma LA. In unlawfully directing payments away from Anoma LA, Natco, Ajay, and Ruchika are diverting profits away from Anoma LA of which Plaintiff is entitled to 50%.

135.   Natco, Ajay, and Ruchika are working together to help each other conceal, withhold, or profit from funds they know are stolen or unlawfully obtained or they assisted in wrongfully obtaining.

136.   Plaintiff owned, possessed, and/or was entitled to immediate possession at the time of the conversion of certain personal property, assets, funds, intellectual property, and profits, including payments from customers in sums capable of identification.

137.   Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, and Ruchika concealed the theft or misappropriation of funds belonging to Anoma LA and/or Plaintiff.

138.   Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, and Ruchika personally benefitted from the theft of payments meant for

1    Anoma LA.

2         139.   Plaintiff did not consent to Natco, Ajay, and Ruchika's unlawful

3    possession of funds belonging to the Company and/or Plaintiff.

4         140.   As a direct and proximate result of the conversion and/or theft of

5    Company assets and funds by Natco, Ajay, and Ruchika, the Company and Plaintiff

6    have suffered damages and lost profits in a sum capable of identification in an

7    amount to be determined at trial, but are in excess of the jurisdictional minimum of

8    this Court.

9         141.   Plaintiff is entitled to an award of treble damages, costs of suit, and

10   reasonable attorneys' fees from Natco, Ajay, and Ruchika on the basis of their

11   participation in the theft of funds belonging to Plaintiff.

12        142.   Plaintiff is informed and believes, and on that basis alleges, that the

13   conduct of Defendants as alleged herein was malicious, fraudulent, and

14   unconscionable, and that an award of exemplary or punitive damages is warranted as

15   against Defendants in an amount to be proven at trial.

16                           **FOURTEENTH CLAIM**

17   **Fraudulent Conveyance with intent to Hinder, Delay, or Defraud (Civil Code §**

18                              **3439.04(a)(1))**

19          **(Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)**

20        143.   Plaintiff realleges and incorporates by reference each and every

21   allegation of the above paragraphs 1 through 142, inclusive, as if fully set forth

22   herein.

23        144.   Plaintiff is informed and believes, and on that basis alleges, that Natco,

24   Ajay, or Ruchika received funds meant for Anoma LA, wrongfully concealed them

25   from Anoma LA and Plaintiff, and are working to direct Anoma LA customers to

26   pay Natco, Ajay, or Ruchika directly. In so doing, Defendants are cutting Plaintiff

27   out of his 50% share of profits, equity, and goodwill and cutting Anoma LA out of

28   revenues it is entitled to. In taking payments directly and bypassing Anoma LA's

1   bank account, Defendants are defrauding the Plaintiff and the Company and

2   frustrating, hindering, and/or delaying Plaintiff's and the Company's ability to

3   collect revenues and profits due and owing to them.

4        145.   Defendants' conduct is unlawful pursuant to California's Uniform

5   Fraudulent Transfers Act, Civil Code, sections 3439.04 et seq.

6        146.   To the extent the fraudulently transferred funds are still held or under

7   the control of Defendants, a constructive trust should be placed on the fraudulently

8   transferred funds, the conveyance of the fraudulently transferred funds should be

9   declared null and void, and the fraudulently transferred funds should be paid over

10   and returned to Anoma LA, or in the alternative, Defendants should be held liable for

11   damages to the Company, in an amount to be established at trial subject to proof, but

12   in no event less than $3,200,000.00 to the Company.

13        147.   Plaintiff is informed and believes, and on that basis alleges, that the

14   conduct of Defendants as alleged herein was malicious, fraudulent, and

15   unconscionable, and that an award of exemplary or punitive damages is warranted as

16   against Defendants in an amount to be proven at trial.

17                       **FIFTEENTH CLAIM**

18   **Fraudulent Conveyance with intent to Hinder, Delay, or Defraud (Civil Code §**

19                           **3439.04(a)(1))**

20        **(Direct Claim Against Natco, Ajay, Ruchika and Does 1-10)**

21        148.   Plaintiff realleges and incorporates by reference each and every

22   allegation of the above paragraphs 1 through 147, inclusive, as if fully set forth

23   herein.

24        149.   Plaintiff is informed and believes, and on that basis alleges, that Natco,

25   Ajay, or Ruchika received funds meant for Anoma LA, wrongfully concealed them

26   from Anoma LA and Plaintiff, and are working to direct Anoma LA customers to

27   pay Natco, Ajay, or Ruchika directly. In so doing, Defendants are cutting Plaintiff

28   out of his 50% share of profits and cutting Anoma LA out of revenues it is entitled

1  to. In taking payments directly and bypassing Anoma LA's bank account,

2  Defendants are defrauding the Plaintiff and the Company and frustrating, hindering,

3  and/or delaying Plaintiff's and the Company's ability to collect revenues and profits

4  due and owing to them.

5        150.   Defendants' conduct is unlawful pursuant to California's Uniform

6  Fraudulent Transfers Act, Civil Code, sections 3439.04 et seq.

7        151.   To the extent the fraudulently transferred funds are still held or under

8  the control of Defendants, a constructive trust should be placed on the fraudulently

9  transferred funds, the conveyance of the fraudulently transferred funds should be

10  declared null and void, and the fraudulently transferred funds should be paid over

11  and returned to Anoma LA, or in the alternative, Defendants should be held liable for

12  damages to Plaintiff, in an amount to be established at trial subject to proof, but in no

13  event less than $1.7 million.

14        152.   Plaintiff is informed and believes, and on that basis alleges, that the

15  conduct of Defendants as alleged herein was malicious, fraudulent, and

16  unconscionable, and that an award of exemplary or punitive damages is warranted as

17  against Defendants in an amount to be proven at trial.

18  **SIXTEENTH CLAIM**

19  **Money Had and Received**

20  **(Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)**

21        153.   Plaintiff realleges and incorporates by reference each and every

22  allegation of the above paragraphs 1 through 152, inclusive, as if fully set forth

23  herein.

24        154.   Plaintiff is informed and believes, and on that basis alleges, that Natco,

25  Ajay, or Ruchika received funds meant for Anoma LA, wrongfully concealed them

26  from Anoma LA and Plaintiff, and are working to direct Anoma LA customers to

27  pay Natco, Ajay, or Ruchika directly. In so doing, Defendants are cutting Plaintiff

28  out of his 50% share of profits and cutting Anoma LA out of revenues it is entitled

to. In taking payments directly and bypassing Anoma LA's bank account, Defendants are defrauding the Plaintiff and the Company and frustrating, hindering, and/or delaying Plaintiff's and the Company's ability to collect revenues and profits due and owing to them.

155.   The funds diverted away from the Company by the Defendants are not being used for the benefit of the Company as they are not available to the Company to pay its expenses and debts.  Further, the funds diverted away from the Company by the Defendants cannot be used to pay Plaintiff his share of the profits should Anoma LA generate profits.

156.   The Defendants have not given the money to the Company or to Plaintiff.

157.   As a direct and proximate result of Natco, Ajay, and Ruchika's conduct as alleged herein, the Company has been damaged in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $3.2 million.

## SEVENTEENTH CLAIM

## Money Had and Received

### (Direct Claim Against Natco, Ajay, Ruchika and Does 1-10)

158.   Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 157, inclusive, as if fully set forth herein.

159.   Plaintiff is informed and believes, and on that basis alleges, that Natco, Ajay, or Ruchika received funds meant for Anoma LA, wrongfully concealed them from Anoma LA and Plaintiff, and are working to direct Anoma LA customers to pay Natco, Ajay, or Ruchika directly. In so doing, Defendants are cutting Plaintiff out of his 50% share of profits and cutting Anoma LA out of revenues it is entitled to. In taking payments directly and bypassing Anoma LA's bank account, Defendants are defrauding the Plaintiff and the Company and frustrating, hindering, and/or delaying Plaintiff's and the Company's ability to collect revenues and profits

due and owing to them.

160.   The funds diverted away from the Company by the Defendants are not being used for the benefit of the Company as they are not available to the Company to pay its expenses and debts.  Further, the funds diverted away from the Company by the Defendants cannot be used to pay Plaintiff his share of the profits, equity, and goodwill.

161.   The Defendants have not given the money to the Company or to Plaintiff.

162.   As a direct and proximate result of Natco, Ajay, and Ruchika's conduct as alleged herein, Plaintiff has been damaged in an amount exceeding the jurisdictional limit of this Court, to be proven at trial, but no less than $1.7 million.

## EIGHTEENTH CLAIM

### Unjust Enrichment

### (Direct Claim Against Natco, Ajay, Ruchika and Does 1-10)

163.   Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 162, inclusive, as if fully set forth herein.

164.   By engaging in the wrongful acts as alleged herein, Defendants received substantial benefits from the Company and Plaintiff by false, misleading, and fraudulent means.

165.   Defendants led Plaintiff to believe that they were forming a company together whereby Ruchika would secure clients and provide design work, Natco would provide manufacturing, and Plaintiff would secure clients, and import, distribute, and sell the Company's stone and fulfill customers' orders throughout the United States.

166.   It turns out Defendants misled Plaintiff.  Instead, they intended to cut Plaintiff out of his 50% share of the profits, equity, and goodwill of the Company and trade on the reputation and goodwill he built up as soon as the Company became

1  lucrative.

2      167.   As alleged herein, Plaintiff conferred a benefit on Defendants, in that he

3  made valuable contributions to the business development of the Company, including

4  providing showroom space in one of his warehouses at rental rates well below

5  market, hiring of sales staff, purchasing of reports on major construction projects to

6  identify potential customers, developing relationships with repeat customers, and

7  developing business for Anoma LA.

8      168.   Defendants misused the business goodwill and reputation that Plaintiff

9  built up for Anoma LA to take unjust benefits for themselves including, without

10  limitation:

11          a.    Ruchika used and is continuing to use the Anoma LA name to

12      generate stonework customers for herself while cutting Anoma LA out of any

13      revenues derived from her business.

14          b.    Ruchika is using the Company website to advertise contact

15      information in her sole control as being contact information for the Company.

16      In so doing, Ruchika is diverting customers and revenues away from Anoma

17      LA.

18          c.    Defendants have unlawfully commandeered the nationwide

19      operations of Anoma LA, diverted all business opportunities in their favor, to

20      the exclusion of Plaintiff, and disrupted Plaintiff's critical role in Anoma LA's

21      day-to-day business operations and dealings with customers and fulfilment of

22      customers' orders. Ruchika is using the Company website to advertise contact

23      information in her sole control as being contact information for the Company.

24      Defendants have cut Plaintiff off from Company email and other computer

25      systems necessary for him to fulfill his critical role in the Company's day-to-

26      day operations and fulfilment of customers' orders

27          d.    Conversion, theft, and/or receipt of the Company's assets,

28      property, corporate opportunities, and funds – including payments due and

46
COMPLAINT

owing to Anoma LA.

169.   Because of Defendants' wrongful acts as described herein, Defendants and each of them have wrongfully acquired monies, assets, and property, together with all profits and advantages derived from them, as constructive trustees for the benefit of the Company and its shareholders, including Plaintiff.

170.   Plaintiff is informed and believes, and on that basis alleges, that Defendants knowingly and willingly performed the fraudulent, tortious, and illegal actions described herein in order to obtain benefits at the expense of the Company and its shareholders, including Plaintiff.

171.   As a direct and proximate result of Defendants' conduct, Defendants have been unjustly enriched, and the Company and its shareholders, including Plaintiff, have been damaged in an amount exceeding the jurisdictional limit to be proven at trial, but no less than $1,900,000.00.

172.   Additionally, Plaintiff derivatively, on behalf of the Company, seeks an order from the Court ordering Defendants to disgorge all profits derived from the misconduct alleged herein.

## NINETEENTH CLAIM

### Unfair Business Practices (Bus. & Prof. Code § 17200 et seq.)

### (Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)

173.   Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 172, inclusive, as if fully set forth herein.

174.   Anoma LA was injured by the unlawful, unfair, and fraudulent business practices of Defendants as alleged in the preceding paragraphs. Anoma LA lost money or property as a result of unlawful business practices by Defendants. As alleged in the preceding paragraphs, Defendant Nacto is owned by Ajay and is a controlling shareholder (50%) of Anoma LA and Defendant Ruchika is one of two Directors of Anoma LA (the other is Plaintiff) and they engaged in unlawful, unfair,

1 and fraudulent business practices that harmed Anoma LA.

2     175.   Anoma LA was injured by Defendants' unlawful business practices as

3 alleged in the preceding paragraphs including, without limitation:

4             a.      Ruchika and Natco usurped corporate opportunities from Anoma

5 LA;

6             b.      Ajay, Ruchika, and Natco unlawfully directed customers of the

7 Company to make payments directly to them bypassing the Company;

8             c.      Ajay, Ruchika, and Natco falsely telling customers of the

9 Company that Plaintiff had been terminated from the Company (he's a

10 shareholder and owner); and

11             d.      Ruchika and Natco are openly competing against the Company

12 despite owing fiduciary duties of loyalty to the Company and to Plaintiff.

13             e.      Defendants have unlawfully commandeered the nationwide

14 operations of Anoma LA, diverted all business opportunities in their favor, to

15 the exclusion of Plaintiff, and disrupted Plaintiff's critical role in Anoma LA's

16 day-to-day business operations and dealings with customers and fulfilment of

17 customers' orders. Ruchika is using the Company website to advertise contact

18 information in her sole control as being contact information for the Company.

19 Defendants have cut Plaintiff off from Company email and other computer

20 systems necessary for him to fulfill his critical role in the Company's day-to-

21 day operations and fulfilment of customers' orders

22     176.   Each of the instances of misconduct alleged above are independently

23 unlawful, unfair, or fraudulent.

24     177.   The misconduct alleged above constitutes unlawful, unfair, or

25 fraudulent business practices in violation of Business and Professions Code, section

26 17200 et seq.

27     178.   Defendants withheld funds or obtained funds rightfully belonging to

28 Anoma LA and deprived Anoma LA of money it is entitled to and should have

1   received but for Defendants' misconduct.

2   179.   Defendants unlawfully profited from money that passed directly to them

3   without passing through Anoma LA and which Plaintiff is entitled to a 50% share of.

4   180.   Anoma LA is entitled to restitution (including, but not limited to,

5   disgorgement of profits).

6   181.   Plaintiff is informed and believes, and on that basis alleges, that the

7   conduct of Defendants as alleged herein was malicious, fraudulent, and

8   unconscionable, and that an award of exemplary or punitive damages is warranted as

9   against Defendants in an amount to be proven at trial.

10                          **TWENTIETH CLAIM**

11                          **Involuntary Dissolution**

12          **(Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)**

13   182.   Plaintiff realleges and incorporates by reference each and every

14   allegation of the above paragraphs 1 through 181, inclusive, as if fully set forth

15   herein.

16   183.   Internal dissension exists in the Company such that its business can no

17   longer be conducted with advantage to its shareholders. Additionally, as set forth

18   herein, Plaintiff has discovered that those in control of the Company, including

19   Ruchika, Ajay, and Natco, have knowingly and willingly committed persistent and

20   pervasive fraud, mismanagement, abuse of authority, and unfairness to Plaintiff.

21   184.   In light of Ruchika, Ajay, and Natco's wrongful acts as alleged herein,

22   it is not reasonably practicable to carry on the business of the Company.  Moreover,

23   dissolution of the Company is reasonably necessary for the protection of the rights

24   and interests of Plaintiff. Indeed, those in control of the Company, namely Ruchika,

25   Ajay, and Natco, have taken the following actions to freeze out Plaintiff and usurp

26   the Company's assets and opportunities:

27          a.      Ruchika and Natco usurped corporate opportunities from Anoma

28   LA;

a.     Ajay, Ruchika, and Natco unlawfully directed customers of the Company to make payments directly to them bypassing the Company;

b.     Ajay, Ruchika, and Natco falsely telling customers of the Company that Plaintiff had been terminated from the Company (he's a shareholder and owner);

c.     Ajay, Ruchika, and Natco cut Khazai off from email and computer systems for the Company;

d.     Ruchika changed the Company's contact information on the Company's website to a phone number and email address that only she has access to;

e.     Ruchika and Natco are openly competing against the Company despite owing fiduciary duties of loyalty to the Company and to Plaintiff.

f.     Defendants have unlawfully commandeered the nationwide operations of Anoma LA, diverted all business opportunities in their favor, to the exclusion of Plaintiff, and disrupted Plaintiff's critical role in Anoma LA's day-to-day business operations and dealings with customers and fulfilment of customers' orders. Ruchika is using the Company website to advertise contact information in her sole control as being contact information for the Company. Defendants have cut Plaintiff off from Company email and other computer systems necessary for him to fulfill his critical role in the Company's day-to-day operations and fulfilment of customers' orders; and

g.     Defendants are unlawfully and artificially devaluing the Company in an effort to decrease the amount of money that must be paid to Plaintiff in order to buy out his share of the Company.

185.   Accordingly, Plaintiff has been frozen out of the Company and dissolution of the Company is reasonably necessary for the protection of Plaintiffs' rights and interests.

# TWENTY-FIRST CLAIM

## Accounting

### (Derivative Claim Against Natco, Ajay, Ruchika and Does 1-10)

186.   Plaintiff realleges and incorporates by reference each and every allegation of the above paragraphs 1 through 185, inclusive, as if fully set forth herein.

187.   As a shareholder of Anoma LA, Plaintiff has standing to inquire into and is entitled to know what funds Ajay, Natco, and Ruchika diverted away from Anoma LA despite Anoma LA's entitlement to those funds.  Anoma LA also has standing to inquire into and is entitled to know what funds Ajay, Natco, and Ruchika diverted away from Anoma LA despite Anoma LA's entitlement to those funds.

188.   While Plaintiff is in control of  Anoma LA's finances (e.g., bank account, tax returns, and other accounting records), Defendants are in possession of additional documents, books, and records relating to funds that should be included in the Company's profits, assets, and account balances. And, if there are profits, Plaintiff is entitled to a 50% share of those profits.

189.   Natco, Ajay on behalf of Natco, and Ruchika are fiduciaries of the Company and its shareholders and owe fiduciary duties to the Company and its shareholders, including Plaintiff.

190.   Pursuant to Corporations Code, sections 1601 and 1602, Plaintiff is entitled to information about Anoma LA's customers, payments made by Anoma LA's customers to Natco, Ajay, and Ruchika, outstanding customer balances, and other information related to Defendants' usurpation of corporate opportunities and diversion of customer payments to themselves.

191.   The precise amount of damages due from Defendants to the Company and Plaintiff is unknown to Plaintiff and, therefore, cannot be properly ascertained without a complete and thorough accounting of Defendants' records and accountings.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, and each of them, as follows:

ON THE DIRECT CLAIMS (FIRST, SECOND, FOURTH, FIFTH, THIRTEENTH, FIFTEENTH, SEVENTEENTH, AND EIGHTEENTH CLAIMS)

1.     For compensatory damages in an amount according to proof at trial, but no less than $1,700,000.00;

2.     For treble damages for theft (Penal Code, § 496(c); 18 U.S.C. § 1962(c)) of funds belonging to Plaintiff by Defendants;

3.     For an order:

a.     Setting aside and vacating the conveyance, transfer, and disposition of the fraudulently transferred funds or, in the alternative, providing that damages be awarded to Plaintiff in an amount subject to proof at trial but no less than $1,700,000.00;

b.     Finding that Defendants and each of them are constructive trustees of all funds and assets in their possession, custody, or control, including the fraudulently transferred funds, which they obtained through their misconduct in obtaining customer payments outside of the Company and directly to themselves cutting out Plaintiff, and providing that the funds shall be deposited with the Court by each and every Defendant now holding or possessing the same or claiming any rights, title, or interest therein; and

c.     Providing for a judgment holding Defendants liable for any and all such funds and assets, including the fraudulently transferred funds, for which they fail to properly account, together with interest thereon at the legal rate.

4.     For exemplary or punitive damages, in an amount according to proof at trial;

5.     For restitution in an amount to be determined at trial;

1      6.      For disgorgement of profits as appropriate;

2      7.      For injunctive relief as appropriate;

3      8.      For costs of suit incurred herein;

4      9.      For attorneys' fees as allowed by law;

5      10.    For interest accrued at the legal rate as permitted by law; and

6      11.    For such other and further relief as the Court deems just and proper.

## ON THE DERIVATIVE CLAIMS (THIRD, SIXTH, SEVENTH, EIGHTH, NINTH, TENTH, ELEVENTH, TWELFTH, FOURTEENTH, SIXTEENTH, NINETEENTH, TWENTIETH, AND TWENTY-FIRST CLAIMS)

1.      For compensatory damages in an amount according to proof at trial, but no less than $1,700,000.00;

2.      For treble damages for theft (Penal Code, § 496(c)) of funds belonging to Plaintiff by Defendants;

3.      For an order:

      a.      Setting aside and vacating the conveyance, transfer, and disposition of the fraudulently transferred funds or, in the alternative, providing that damages be awarded to the Company in an amount subject to proof at trial but no less than $3,200,000.00;

      b.      Finding that Defendants and each of them are constructive trustees of all funds and assets in their possession, custody, or control, including the fraudulently transferred funds, which they obtained through their misconduct in obtaining customer payments outside of the Company and directly to themselves cutting out Plaintiff, and providing that the funds shall be deposited with the Court by each and every Defendant now holding or possessing the same or claiming any rights, title, or interest therein; and

      c.      Providing for a judgment holding Defendants liable for any and all such funds and assets, including the fraudulently transferred funds, for

which they fail to properly account, together with interest thereon at the legal rate.

4.    For an order:

a.    Enjoining Defendant Ruchika from acting as a Director of the Company or taking an active role in the management of the Company;

b.    Enjoining Defendant Natco from taking an active role in the management of the Company;

c.    Enjoining Defendant Ajay from taking an active role in the management of the Company;

d.    Appointing a receiver to manage the Company temporarily and put it up for sale and thereafter manage the negotiations and sale of the business and oversee the distribution of any proceeds and/or assets from the sale of the business; and

e.    Finding that any efforts by Natco, Ajay, or Ruchika to unilaterally and unlawfully dissolve the Company be deemed improper and rescinded.

5.    For an order from the Court compelling Defendants, and each of them, to:

a.    Permit Plaintiff full access to all books, records, documentation, and information relating to the Company's business; and

b.    Disclose to Plaintiff complete and accurate information on all matters related to the Company's business, its financial condition, and its value.

6.    For exemplary or punitive damages, in an amount according to proof at trial;

7.    For restitution in an amount to be determined at trial;

8.    For disgorgement of profits as appropriate;

9.    For injunctive relief as appropriate;

10.    For costs of suit incurred herein;

COMPLAINT

11.    For attorneys' fees as allowed by law;

12.    For interest accrued at the legal rate as permitted by law; and

13.    For such other and further relief as the Court deems just and proper.

Dated:  January 5, 2022          NOVIAN & NOVIAN, LLP
                                 Attorneys at Law

                                 By:  _____/s/ Farhad Novian_____
                                      FARHAD NOVIAN
                                      ANTHONY S. CHAVEZ
                                      SHANNA JAVAHERI


                                 Attorneys for Plaintiff SHAHRIAR KHAZAI,
                                 suing individually and derivatively on behalf of
                                 ANOMA LA, CORP.

1

## **DEMAND FOR JURY TRIAL**

2

3
Plaintiff SHAHRIAR KHAZAI demands a jury trial of all triable issues.

4
Dated:  January 5, 2022              NOVIAN & NOVIAN, LLP

5
                                     Attorneys at Law

6
                                     By:      /s/ Farhad Novian

7
                                     FARHAD NOVIAN
                                     ANTHONY S. CHAVEZ

8
                                     SHANNA JAVAHERI

9

10
                                     Attorneys for Plaintiff SHAHRIAR KHAZAI, an
                                     individual

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28